238 So.2d 86 (1970)
Joseph C. RUPP, M.D., Petitioner,
v.
James W. JACKSON, Ethel B. Jackson and Ruth Adamson, Respondents.
No. 39310.
Supreme Court of Florida.
July 22, 1970.
Rehearing Denied September 21, 1970.
*87 Edward A. Perse of Carey, Dwyer, Austin, Cole & Selwood, Miami, for petitioner.
William E. Blyler, of Patterson, Maloney & Frazier, Fort Lauderdale, for respondents.
CARLTON, Justice:
The Fourth District Court of Appeal has certified that its decision in this cause, reported at 228 So.2d 916, is one which passes upon a question of great public interest. We have jurisdiction. Article V, Section 4(2), Florida Constitution, F.S.A.
This litigation was initiated in the form of a tort action against petitioner, an Associate Broward County Medical Examiner, for his allegedly unauthorized performance of an autopsy upon the body of respondents' mother. Petitioner raised as a defense authority of law by virtue of his official position and his motion for directed verdict was granted by the trial court at the close of plaintiff-respondents' presentation of evidence; final judgment was entered accordingly. The District Court, with one dissent, reversed and remanded for continuation of the trial. We affirm this decision.
Discussion of this case has been divided into two sections because the case presents an opportunity to comment upon a question which frequently arises in regard to "public interest questions" certified to this Court.

I. Certification

Article V, Section 4(2), Florida Constitution, includes the following language:
"The supreme court may review by certiorari any decision of a district court of appeal that affects a class of constitutional or state officers, or that passes upon a question certified by the district court of appeal to be of great public interest, or that is in direct conflict with a decision of another district court of appeal or of the supreme court on *88 the same point of law, and may issue writs of certiorari to commissions established by law."
In the instant case, the District Court entered as its certificate the following order:
"ORDERED that the opinion of this court filed November 7, 1969, is hereby certified to be one which passes upon a question of great public interest."
Petitioner attached this certification to his petition as the vehicle for jurisdiction in this Court. Respondents countered with a Motion to Strike And/Or Dismiss the Petition, in which the following argument was submitted:
"Article V, Section 4(2), Florida Constitution, and Rule 4.5(c) (6), Florida Appellate Rules, provide for jurisdiction of this Court for issuance of a writ of certiorari in the instance where a District Court of Appeal decision `passes upon a question certified by such district court to be one of great public interest.' (Emphasis added.) In other words, it is the certification of a question, not an opinion, which triggers the exercise of jurisdiction of the Supreme Court."
This is a logical argument. It cannot be denied that the constitutional language carries with it the implication that a "question" must be certified to be "of great public interest," and that it is this certified question which then acts as a vehicle to bring the entire decision before this Court. In considering an answer to this proposition, care should be given to separate this issue from the issue of whether we will review the propriety of the District Court's decision to certify, or withhold certification, in a case. It is firmly established that this is a matter wholly within the province of the deciding District Court. Article V, Section 4(2), Florida Constitution; Zirin v. Charles Pfizer Co., 128 So.2d 594 (Fla. 1961).
The precise issue here is whether the form of the certificate comports with constitutional requirements. In Susco Car Rental System of Florida v. Leonard, 112 So.2d 832 (Fla. 1959), wherein we said we could not question the appropriateness of a District Court's decision to certify a decision, the comment was made that nonetheless,
"[T]here is authority for the proposition, not raised or pertinent in the case at bar, that such a certificate would not cover or prevent inquiry as to whether a decision actually involves or properly `passes on' a particular question. (Citations omitted)." 112 So.2d 835.
We have reviewed the cases in this area and have decided that the decision of Duggan v. Tomlinson, 174 So.2d 393 (Fla. 1965), is closest to the point. In Duggan, neither litigant requested certification. The District Court, acting on its own motion, drew up a certificate which appears in the first page of our reported decision in the case. The certificate was drafted along the lines of the certificate in the instant case, i.e., the decision was certified as one passing upon a question of great public interest, but no question was particularized. In Respondent Tomlinson's brief there was an expression of bewilderment as to why the Court would have certified the decision, and the speculation was made that perhaps it was because the deciding panel was divided; see Duggan v. Tomlinson, 167 So.2d 2 (1st D.C.A. Fla. 1964).
Respondent Tomlinson did not move to strike the certificate; indeed it was conceded in his brief that jurisdiction was not open to question. Nonetheless, this Court felt it necessary to respond to Tomlinson's comments. After setting out the District Court's certification, the Court went on to say, 174 So.2d at 393, 394:
"The provisions of Article V, Section 4(2) * * * fills an interstice in our constitutional certiorari jurisdiction and is particularly applicable to decisions of the district courts of appeal of first impression, where no decisional conflict or other factor involving our certiorari jurisdiction *89 is invoked. The constitutional provision just quoted limits our certiorari review in these instances to those decisions of such district courts which pass upon a question certified by such courts to be of great public interest. The certification process has been resorted to by the district courts of appeal in clear recognition of such constitutional limitations." (Emphasis supplied.)
The above quotation recites standard doctrine previously set out in Zirin, supra, and other cases. Note where emphasis is supplied: the court continues to speak of decisions which pass upon questions certified to be of great public interest. But then the court said:
"While the ultimate decision of whether the decision does pass upon a question of great public interest is one which the Constitution vests exclusively in the district courts, it would be of great assistance to this Court in reviewing the case if, in such instances, the district court would clearly set forth in such certificate the question or questions which in its opinion is of such public interest as to bring the decision within the orbit of the constitutional provision."
From the above language, it is clear that we have conceded to the district courts absolute discretion in regard to determining the form of the certification. This decision is adhered to today, and the Motion to Strike stands denied; but since Duggan treats the issue somewhat obliquely, the following remarks are made so as to squarely decide the issue.
We do not view the language of Article V, Section 4(2) as requiring that a specific question be set out as certified because in any event we are privileged to review the entire decision and record. Zirin v. Charles Pfizer & Co., supra; Confederation of Can. Life Ins. Co. v. Vega y Arminan, 144 So.2d 805 (Fla. 1962); Scherer & Sons, Inc. v. International Ladies' G. Wkrs., 142 So.2d 290 (Fla. 1962). This being so, we cannot escape having before us whatever question is contained in the case which the District Court deems to be of great public interest. Moreover, since we are precluded from weighing the propriety of a certification, we must conclude from the fact of certification per se that, whatever our limited perception of the question may be, the District Court was satisfied that such a question is contained in the decision.
If a specific question does not appear in the certificate, it has generally been our experience that the question thought to be of great public interest becomes evident as the decision is reviewed. Nonetheless, statement of the question greatly facilitates this effort and properly focuses attention upon the aspect of the case that the District Court deems to be of interest. See Stein v. Darby, 134 So.2d 232 (Fla. 1961), and then compare the certification rendered by the District Court in the instant case with the certification appearing in this Court's opinion in Southeast Title & Ins. Co. v. Thompson, 231 So.2d 201 (Fla. 1970), text 202. We prefer the style of the latter certificate; this point was made in the last quotation excerpted from Duggan, supra. Presentation of a precise question enhances the probability that we will pass upon the specific question in mind below; furthermore, preciseness may contribute significantly to our decision whether to pass upon the merits of the case at all, a decision which remains solely within our prerogative under the constitution.

II. Merits of the Case.

The opinion of the District Court adequately reports the facts and they need not be repeated here. We agree with the District Court's decision in all respects. An unauthorized autopsy will support such a tort action. See Kirksey v. Jernigan, 45 So.2d 188 (Fla. 1950); Kimple v. Riedel, 133 So.2d 437 (2d D.C.A.Fla. 1961).
*90 Petitioner relies upon two Acts for his defense: Chapter 27439, a 1951 Special Act for Broward County, and Chapter 30228, Laws of Fla. 1955, a general population act embracing that county. Both Chapters refer to the duties and responsibilities of medical examiners regarding autopsies. Neither support petitioner's action. The Special Act sets out a series of limited circumstances under which an autopsy may be performed without permission of the survivors, but by the terms of the act, authorization by a prosecuting attorney is made a condition precedent to any autopsy. Petitioner admits that no authorization was applied for by anyone.
The general population act also sets out circumstances under which an autopsy may be performed without permission of the survivors. This act differs from the Special Act in two important aspects: first, the examiner may himself determine whether an autopsy is warranted without having to consult other agencies; second, the circumstances under which autopsies are permitted differ from those given in the Special Act. In our judgment, even though the petitioner, as examiner, did not have to secure independent authorization under the general act, none of the circumstances listed therein would support an autopsy. Petitioner dwells upon the fact that the general act authorizes autopsies where the circumstances of the death are "suspicious," but to us this term clearly connotes an inference of foul play.
Petitioner suggests that aside from these Chapters, another reason warranted the autopsy. At the time of the death, Fla. Stat. § 382.09 (1965), F.S.A. required that the last attending physician execute a death certificate specifying "[T]he cause of death, so as to show the course of disease or sequence of causes resulting in the death * * *." Petitioner points out that the attending physician testified below that he could not determine the cause of death because by the time that the deceased was admitted as a patient, her condition had deteriorated to the extent that diagnostic testing was not possible. In this situation, petitioner felt a duty to perform the autopsy so that the cause of death could be accurately determined.
We are not persuaded by this argument. Fla. Stat. § 382.09 (1965), F.S.A. relates to the duties of the attending physician and makes no mention of recourse to a medical examiner if the cause of death cannot be determined. Nor do the Chapters treated previously sustain independent action of the examiner in such a situation unless the conditions of those Chapters are complied with. Admittedly this may give rise to anomalous situations wherein the attending physician has a duty to execute a death certificate but can not properly do so in absence of an autopsy; but no legislation has been called to our attention which would authorize the examiner to step in and take charge of the body in such circumstances. Moreover, it should be noted that Fla. Stat. § 382.09, F.S.A. provides that, "And for deaths in hospitals, * * * the physician shall supply the information required under this head, if he is able to do so, and may state where, in his opinion, the disease was contracted." (Emphasis supplied.)
Since petitioner's defense of authority of law fails, attention now focuses upon the question of malice. We agree with the District Court that this is a matter which should be determined in the trial court below.
Accordingly the writ heretofore issued is discharged.
It is so ordered.
ERVIN, C.J., and ROBERTS, DREW and THORNAL, JJ., concur.